**STATE OF VERMONT**

**SUPERIOR COURT—ENVIRONMENTAL DIVISION**

| | |
|---|---|
| In re Musty Construction Permit<br>(Appeal of Tiballi) | } }<br>} }<br>} }<br>} } |  Docket No. 174-10-10 Vtec<br>(Appeal from Burlington DRB<br>determination) |

### Decision on the Merits

This matter came on for a de novo merits hearing on March 15–16, 2011, at the Costello Courthouse in Burlington. After the conclusion of testimony on the first day of trial, the Court conducted a site visit with the parties. While not evidence, the observations made during the site visit provided a helpful context for the evidence received at trial. Participating in one or both of the days of trial were the Applicant, Cheryl Ann Musty ("Applicant") and her counsel, Liam Murphy, Esq.; Appellant Alfred Tiballi ("Appellant"), a Vermont licensed attorney who represents himself in these proceedings; and a number of neighbors who have appeared as Interested Persons.

The application at issue in this appeal seeks approval for the construction of a single family house, 1,740 square feet in size, on a pre-existing lot, 7,220 square feet in size. Much of the arguments and evidence presented at trial did not specifically challenge the conformance of the pending construction permit application to the applicable provisions of the City of Burlington, VT Comprehensive Development Ordinance ("Ordinance").[1] Rather, much trial time was expended to address concerns about the propriety of the earlier approval of a two-lot subdivision that created the vacant lot upon which development is now proposed. Below we include a brief summary of the procedural history for the prior subdivision process so that a proper understanding may be had of our determination that the current construction permit application conforms to all applicable provisions of the Ordinance.

On December 17, 2008, the City of Burlington Development Review Board ("DRB") granted preliminary and final plat review approval for Applicant's two-lot subdivision of her property then known as 85 Crescent Road. See In re Musty Two Lot Subdivision, Findings of Fact and Conclusions of Law, at 2 (Burlington DRB, Dec. 17, 2008) (hereinafter referred to as "2008 DRB Subdivision Decision"), a copy of

---

[1] At times throughout the trial Appellant and some of the other parties made reference to the Ordinance by use of the acronym "CDO." We use the reference "Ordinance" as it provides more clarity.

which was admitted at our May 15–16, 2011 trial as Appellant's Exhibit D-VI. Applicant's original lot had frontage on two public roads: Crescent Road and Crescent Terrace. An aerial photo admitted at trial as Applicant's Exhibit 2 depicts Appellant's original lot.

The DRB approved Applicant's two-lot subdivision with several conditions. In regards to the front yard setback depicted on what was referred to as the "vacant" lot (that is, the lot now being proposed for development), the DRB noted the following in its subdivision determination:

> The required front yard setback [for the vacant lot] is [sic; should/must be] +/- 5' of the average of the 4 neighboring properties (two on each side) on the same side of the street [as required by Ordinance § 4.4.5(b)]. In this case, there are only 2 neighboring properties, [both] to the south, with frontage on the same side of the street.[2] These neighboring properties have front yard setbacks of about 45' and 11' with the average being 28'. These setbacks are estimates based on orthophotos. Confirmation with on-the-ground measurements from the applicant is needed. Assuming the estimates are accurate, a 23' to 33' front yard setback would be required. A 23' front yard setback is depicted [for the vacant lot] on the plat plan. Prior to filling the plat mylar in the land records, this front yard setback must be verified by the land surveyor as noted.

2008 DRB Subdivision Decision, at 2 (footnote added).

In light of this factual determination, the DRB elected to condition its approval of Applicant's 2008 two-lot subdivision application by including the following requirement:

> **Prior to filing the [final] property plat mylar** with the City Clerk, a revised plat plan showing the front yard setbacks on the two adjacent properties to the south and a compliant front yard setback on the proposed vacant lot shall be submitted, subject to staff review and approval.

2008 DRB Subdivision Decision, at 5 (emphasis in original).

Subsequent to the 2008 DRB Subdivision Decision, Applicant caused a revised plat to be created; a copy of that revised final plat was admitted at trial as Applicant's Exhibit 4. The revised final plat notes that the two adjoining residences have front yard setbacks of 52.2 feet and 24.7 feet, respectively. Id. It also includes a revision to the front yard setback for Applicant's newly created lot, which has frontage on

---

[2] For reference purposes only, we note that Appellant's residence is located on one of these neighboring properties; his residence is located on the second property to the south from Applicant's property.

2

Crescent Terrace, depicting the setback as 35 feet. Id. Apparently, in order to increase the front yard setback for this lot, the dividing line between the two lots created through the subdivision was moved towards Applicant's existing home, located at 85 Crescent Road. By moving the subdivision dividing line between the two lots in that direction, the size of the newly created lot was increased to a total of 7,220 square feet. See Applicant's Exhibit 4.

The revised final plat for the two-lot subdivision was reviewed and approved by the City Engineer, Steven Goodkind, who affixed a stamp and signature to the plat. Id. The revised final plat was also reviewed and approved by the DRB Chairman, Austin D. Hart, who also affixed a stamp and signature to the final plat along with the date of "19th day of May, 2009." Id. By this stamp, the DRB Chairman certified that the revised final plat was approved, pursuant to the DRB "Resolution" of December 17, 2008, which we understand to be a reference to the findings and conditions contained in the 2008 DRB Subdivision Decision.

Lastly, on July 10, 2009, the City of Burlington ("City") Zoning Compliance Officer issued a certificate of compliance as to the two lot subdivision. See Applicant's Exhibit 17. While no structure had yet been approved or built on the newly created lot, this certification is entitled "Unified Certificate of Occupancy." Id. The City provided credible testimony at trial that such Certificates are issued in the ordinary course of business by the Zoning Compliance Officer and the City Building Inspector to indicate that an applicant has conformed to all terms and conditions of the applicable subdivision or zoning approval.

No party to the subdivision proceedings chose to appeal the DRB Decision or the subsequent staff and DRB Chairman's actions that followed that Decision. Such actions and Decision therefore became final and binding upon the parties, who are specifically prohibited from challenging the prior determinations in any subsequent proceedings. 24 V.S.A. § 4472(d).

After the Unified Certificate was issued concerning Applicant's prior subdivision, Applicant filed an application to develop the new lot created by the 2008 subdivision. By this application, Applicant proposed to construct a single family dwelling that respected the setbacks depicted on the approved revised final plat (Exhibit 4). The City Zoning Administrator concluded that Applicant's proposed single family dwelling development conformed to all applicable Ordinance provisions and

3

issued Zoning Permit #10-1042BA.  Two sets of concerned neighbors, Alexander and Phyllis Rose and Frederick and Lynne Tiballi, filed timely appeals with the DRB of the Zoning Administrator's approval.  When the DRB upheld the issuance of Zoning Permit #10-1042BA, Mr. Tiballi filed a timely appeal with this Court.

Once the Court completed receiving all evidence and legal arguments at its March 15–16, 2011 de novo trial, the Court took a brief recess and completed its deliberations.  Thereafter, the Court reconvened and the undersigned issued Findings of Fact and Conclusions of Law on all Ordinance provisions applicable to the pending construction permit application.  Specifically, the Court found that the three-page site plan submitted at trial (Applicant's Exhibits 8, 9, and 10) showed that the development proposed for the currently vacant lot, known as 62 Crescent Terrace, conforms to all dimensional requirements specified for this zoning district, including lot coverage, setbacks, building height, and density.  See Ordinance § 4.4.5(b).  So as to assure conformance with all applicable Ordinance provisions, the Court adopted the City's recommendations that approval be made subject to certain project-specific and standard permit conditions itemized in the City's Exhibit BB.

We understand and have sympathy for the concerns expressed by Appellant and other concerned neighbors regarding the procedural history of the prior subdivision approval.  One may have the first impression that Applicant was attempting to develop a lot that, when it was approved by the DRB in 2008, consisted on only 6,020 square feet, but later had an increased size of 7,220 square feet.  But a complete reading of the 2008 DRB Subdivision Decision and review of the approvals issued by the staff and DRB Chairman following the DRB Decision, belay our concerns about the propriety of the actions taken and approvals issued.

Sometimes, our instinct when reviewing the past actions of others is to assume that their actions were somehow defective or incorrect.  The Court made such an assumption when reviewing the 2008 DRB Subdivision Decision and the revised final plot plan that was certified by the City Zoning Administrator and DRB Chairman.  However, after listening to the presentation of evidence and closing arguments offered by the principal parties and the City, we concluded that the City's proceedings concerning the prior subdivision were entirely proper and followed the DRB's specific direction in its 2008 subdivision approval.  Specifically, the DRB directed both that the Applicant prepare a "revised subdivision plat" confirming conformity to the

4

applicable front yard setback requirements for the newly created lot, and that the City Zoning Office staff review that revised plat for accuracy prior to its recording in the City's Land Records. These directions from the DRB were followed to the letter, resulting in the recording of a revised subdivision plat that was approved by the Zoning Officer and certified by the DRB Chairman.

Thus, when reviewing the conformance of the pending construction permit application with the applicable Ordinance provisions, our starting point was the revised subdivision plan that was approved and certified by City officials, a copy of which was admitted at trial as Exhibit 4. With that description of the subject property in mind, and after having received the evidence admitted at trial that relates to the proposed construction, we ultimately concluded that the construction permit application conforms to all applicable Ordinance provisions.

## Conclusion

For all these reasons, this Court **UPHOLDS** the issuance of Zoning Permit #10-1042BA to Cheryl Ann Musty and thereby authorizes the development of the 7,220 square foot lot at 62 Crescent Terrace with a single family residence, subject to the project-specific and standard permit conditions itemized in the City of Burlington Exhibit BB.

A Judgment Order accompanies this Merits Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 27th day of April, 2011.

_____
Thomas S. Durkin, Environmental Judge

5